UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

SHIRLEY SANTHOSH and MAMMEN SANTHOSH,

                     Plaintiffs,               **MEMORANDUM & ORDER**
                                                 25-CV-1447(EK)(JAM)

           -against-

WELLS FARGO BANK, N.A.,

                     Defendant.

------------------------------------x
ERIC KOMITEE, United States District Judge:

      Plaintiffs Shirley and Mammen Santhosh bring this lawsuit against their loan servicer, Wells Fargo Bank, N.A. ("Wells"), alleging that Wells's servicing mistakes violated the Real Estate Settlement Procedures Act ("RESPA").  Central to the dispute is a 2021 modification to the Santhoshes' home-mortgage loan that increased their principal balance.  Believing the increase may have been improper, and seeking clarity on the makeup of their new principal balance, the Santhoshes sent Wells two letters requesting documents related to their account history.

      The Santhoshes allege, among other things, that Wells's responses to both letters were inadequate and therefore violated RESPA.  They argue that Wells failed to provide all requested information and failed to correct or explain certain alleged errors.  Wells now moves to dismiss.

For the reasons set forth below, Wells's motion is granted in part. The case will proceed on plaintiffs' allegation that Wells's response to plaintiffs' first letter violated RESPA.

## I.    Background

The following recitation is taken from the Santhoshes' amended complaint and the loan-modification documents that are "integral" to it. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).[1] The Court also takes judicial notice of certain matters of public record, including the Santhoshes' prior bankruptcy proceeding. *Am. Tissue, Inc.* v. *Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 96 (S.D.N.Y. 2004).

In 2006, Wells loaned the plaintiffs slightly more than $687,000. Am. Compl. ¶ 14, ECF No. 17. The loan was memorialized in a fixed-rate note and secured by a mortgage on the Santhoshes' residence on Staten Island. *Id.* ¶¶ 13-14. After defaulting on the mortgage, and facing a foreclosure action by Wells, the Santhoshes filed for bankruptcy in 2019. *See Wells Fargo Fin. Credit v. Santhosh*, No. 135110/2017 (N.Y. Sup. Ct. Richmond Cnty.); *In re Santhosh Mammen*, No. 19-45476 (Bankr. E.D.N.Y. Sept. 12, 2019). In response, the parties

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

entered into a loan modification agreement in 2021, which plaintiffs refer to as Modification 2 because it was the second time the loan was modified. Am. Compl. ¶ 17. Under the terms of Modification 2, $53,476.34 was capitalized into the loan's principal balance. *Id.* Modification 2 memorialized the parties' agreement that the modified principal balance included "all amounts and arrearages that will be past due as of the Modification Effective Date." *Id.* ¶ 18. Despite having so agreed, the Santhoshes now allege that they cannot verify the validity of the $53,476.34 capitalized into Modification 2 because Wells has not properly disclosed the makeup of that amount. *Id.* ¶¶ 19, 21, 68.

In May 2024, more than two years after agreeing to Modification 2, the Santhoshes sent a letter to Wells requesting information ("Letter 1" or "QWR 1"). *Id.* ¶ 22; *see also* Letter 1, ECF No. 17-5. The first letter requested twenty-seven categories of documentation that, according to the Santhoshes, sought "to verify the overall accuracy of their new loan balance under Modification 2." Am. Compl. ¶¶ 21; *see also* Letter 1. These included itemized explanations of various fees, costs, and other charges assessed over the life of the loan. Am. Compl. ¶¶ 21-22; *see also* Letter 1.

On May 17, 2024, Wells responded, providing account information and transaction history data spanning the period

3

from 2015 to 2024.  *See* Letter 1 Response, ECF No. 17-6.[2]  Wells did not, however, provide the full scope of requested information.  Instead, Wells explained that some of the requests were overbroad and that some information was unavailable due to its seven-year record-retention policy.  *Id.; see also* Am. Compl. ¶¶ 27, 33.

Unsatisfied with Wells's response, the Santhoshes sent a second letter ("Letter 2" or "QWR 2") in August 2024.  *Id.* ¶ 23.  Letter 2 contained eight new requests and also reiterated the requests set out in Letter 1 — thus continuing to seek several categories of information that Wells had previously stated were unavailable.  *Id.* ¶¶ 23-24 (requesting, for example, "a complete loan payment history from February 22, 2006, to the present" and "an itemization and explanation of all fees (especially those capitalized into Modification 2)").  The following month, Wells responded and acknowledged possession of, and provided, substantial documentation it had omitted in its response to Letter 1.  Letter 2 Response, ECF No. 17-8; *see also* Am. Compl. ¶ 37.  The Santhoshes then filed this suit alleging that Wells's responses remained deficient.  Am. Compl. ¶¶ 64-71.

The Santhoshes brought the following causes of action: (1) Count I alleged a violation of RESPA and Regulation X for

---

[2] Pincites to documents other than pleadings and briefs use ECF pagination.

4

failing to adequately respond to the QWRs and correct identified errors, under 12 U.S.C. §§ 2605(e), (k), and 12 C.F.R. §§ 1024.35, 1024.36; (2) Count II alleged a violation of RESPA and Regulation X for improper administration of escrow accounts, under 12 U.S.C. §§ 2605(g), (k), and 12 C.F.R. §§ 1024.17, 1024.34; (3) Count III alleged a violation of RESPA and Regulation X for violating servicer prohibitions and failing to maintain policies and procedures mandated under the statute, under 12 U.S.C. §§ 2605(k), (l), and 12 C.F.R. §§ 1024.37, 1024.38; (4) Count IV alleged a violation of TILA and Regulation Z for failing to adhere to required servicing practices, under 15 U.S.C. § 1639f and 12 C.F.R. § 1026.36; (5) Count V alleged a violation of TILA and Regulation Z for prohibited dual compensation charges and improper fees, under 12 C.F.R. § 1026.36; and (6) Count VI alleged a violation of TILA and Regulation Z for failing to comply with post-consummation disclosure requirements, under 15 U.S.C. § 1631 and 12 C.F.R. § 1026.20.

Wells moved to dismiss all counts.  The Santhoshes have since voluntarily dismissed all but Count I.  *See* Docket Entry dated Apr. 6, 2026; Pl.'s Letter, ECF No. 30.  That sole remaining count is addressed below.

## II.  Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor.  *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).  At the same time, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678.

## III. Discussion

Count I alleges that both of Wells's responses violated RESPA by failing to provide all requested information. "To state a claim under RESPA, a plaintiff must [1] allege that the defendant failed to comply with specific RESPA provisions and [2] identify damages that he or she sustained as a result of the defendant's alleged RESPA violations."  *Kremenchutsky v. Citizens Bank N.A.*, No. 24-CV-1615, 2025 WL 1249623, at *4 (E.D.N.Y. Apr. 30, 2025).  RESPA and its implementing

6

regulation, Regulation X, provide certain rights to consumers who submit qualified written requests ("QWRs") to their loan servicers.  12 U.S.C. § 2605(e).  When multiple QWRs are at issue, we assess each QWR separately.  *Rosendale v. Mr. Cooper Grp., Inc.*, No. 19-CV-9263, 2021 WL 4066821, at *10 (S.D.N.Y. Sept. 7, 2021).  The Santhoshes allege that Wells's failure to provide all of the requested information caused actual damages in the form of, among other things, the out-of-pocket costs related to the unsatisfactory responses.  Am. Compl. ¶ 52.

Wells moves to dismiss on four bases: (1) neither of the Santhoshes' letters qualify as QWRs; (2) the RESPA claims are time-barred; (3) regardless, Wells provided all of the information it was obligated to provide; and (4) even if Wells did not provide all the information, the Santhoshes have not suffered any damages.[3]

None of these reasons mandates dismissal at this stage.

---

[3]  Wells also argues that all claims are barred by the voluntary payment doctrine.  Mem. in Supp. of Def.'s Mot. to Dismiss 7, ECF No. 22-10.  Courts disfavor applying the voluntary payment doctrine at the motion-to-dismiss stage.  *Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d Cir. 2009).  But even if applicable, the voluntary payments would have to be visible on the face of the complaint.  *Wurtz v. Rawlings Co., LLC*, No. 12-CV-1182, 2014 WL 4961422, at *7 (E.D.N.Y. Oct. 3, 2014) (collecting cases).  With nothing in the complaint establishing that any disputed payments were made voluntarily, the doctrine is inapplicable at this stage.

**A.    Plaintiffs' Letters Are QWRs that Qualify as Requests for Information**

   1.    Both Letters Constitute Qualified Written <u>Requests</u>

Wells contends that neither of the Santhoshes' letters qualifies as a QWR because the requests relate to the loan *modification* that the Santhoshes are unhappy about, and not to the *servicing* of the loan.  It is true that a request regarding loan modification or origination does not "relate[] to servicing" and is therefore not a QWR.  *See, e.g.*, *Sutton v. CitiMortg., Inc.*, 228 F. Supp. 3d 254, 265-66 (S.D.N.Y. 2017) (information "concerning why a term extension was not included in her loan modification" did not relate to loan servicing).  But Section 2605 does not require that every individual request in a QWR relate to servicing.  As a result, "[e]ven if some of Plaintiff's requests do not relate to servicing, the letter can still be a QWR" if it "mixes servicing and non-servicing requests."  *Pendleton v. Wells Fargo Bank, N.A.*, 993 F. Supp. 2d 1150, 1153 (C.D. Cal. 2013).  The Santhoshes' letters are mixed requests.  Because at least some requested information categorically relates to servicing, such as their payment history and escrow account disbursements, both letters are QWRs.  Letter 1, at 1; *see, e.g.*, *Harlene Harroo-Lavine & Pearson Lavine v. PHH Mortg. Corp.*, No. 25-CV-1235, 2026 WL 873012, at

*2 (E.D.N.Y. Mar. 30, 2026) (requests for transaction history and escrow account information were QWRs).

2.    The Santhoshes' Letters Are Requests for
      Information, Not Notices of Error

A QWR can be a notice of error, a request for information, or both.  12 C.F.R. §§ 1024.35, 1024.36.  And the servicer's response obligations differ depending on the type of QWR.  *Compare id.* § 1024.35(e), *with id.* § 1024.36(d).  The Santhoshes claim that their letters fall under both categories.  For the reasons that follow, however, we conclude that both letters qualified only as requests for information.

To qualify as a notice of error, the letter must identify "an error relating to the servicing of a mortgage loan*," id.* § 1024.35, and "include[] a statement of the reasons for the belief . . . that the account is in error."  12 U.S.C. § 2605(e)(1)(B).  The Santhoshes claim that both letters "explicitly asserted errors in account information."  Am. Compl. ¶ 67.  That is not accurate.  Neither letter identified any servicing error in the Santhoshes' account, nor provided a "statement of the reasons for the belief . . . that the account is in error."  12 U.S.C. § 2605(e)(1)(B); *Jackson v. Caliber Home Loans*, No. 18-CV-4282, 2019 WL 3426240, at *6 (E.D.N.Y. July 30, 2019).  Instead, both letters merely explained that the Santhoshes "are requesting the following information" and then

listed the information requested.  Letter 1, at 1; Letter 2, at 1.

Moreover, Wells's response to QWR 2 cannot be transformed into a notice of error simply because it "identified the deficiencies in Wells Fargo's prior response."  Mem. in Opp'n to Def.'s Mot. to Dismiss 11, ECF No. 23.  A notice of error is "a statement of the reasons for the belief of the borrower . . . that the *account* is in error."  12 U.S.C. § 2605(e)(1)(B)(ii) (emphasis added).  Thus, the error that is noticed must relate to the loan account itself, rather than a prior request.

Put differently, the plaintiff must point to a *servicing* error.  12 C.F.R. § 1024.35(a).  Section 2605 defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan," "and making the payments of principal and interest," and other related payments.  12 U.S.C. § 2605(i)(3).  Insufficiencies in a QWR response do not occur in the assessment or receipt of payments.  This observation carried the day in another district court in *Walker v. Branch Banking*, which concerned a QWR very much like the one at issue here.  *Walker v. Branch Banking & Tr. Co.*, 237 F. Supp. 3d 1326, 1333 (S.D. Fla. 2017).  In *Walker*, the court explained that a QWR "notifying a loan servicer of its failure to adequately respond" to a prior request for information "does not

notify a servicer of an 'error'" sufficient to establish the instant violation. *Id.* So too here. The Santhoshes' claims under Section 1024.35 are therefore dismissed; the QWRs are requests for information.

**B.   The RESPA Claims Are Not Time-Barred**

RESPA has a three-year statute of limitations. 12 U.S.C. § 2614. Wells contends that the Santhoshes' claims are time-barred because they allege only violations that "occurred when the loan was modified in 2021." Mem. in Supp. of Def.'s Mot. to Dismiss 6. That is incorrect. The focus of the statute of limitations inquiry is not when the underlying modification occurred, but when the claimed RESPA violation occurred. 12 U.S.C. § 2614 (violations under Section 2605 must be brought within three years of "the date of the occurrence of the violation"); *see also Reinhart v. CitiMortg., Inc.*, 677 F. App'x 17, 18 (2d Cir. 2017) (same).

Here, the alleged RESPA violations are Wells's incomplete QWR responses — both issued in 2024. Since the Santhoshes filed this action in 2025, the statute of limitations has not run. *See, e.g., Joseph v. Ocwen Fin. Corp.*, No. 18-CV-4971, 2020 WL 14029571, at *3 (E.D.N.Y. Mar. 30, 2020) (because the case was filed in 2018, "several letters Plaintiffs allegedly sent to Defendants after February 2017 are presumably timely").

**C.    Wells's Response to QWR 1**

    1.    <u>Wells's Response to QWR 1 Was Inadequate</u>

The Santhoshes have plausibly alleged that Wells's response to QWR 1 violated RESPA.  As noted above, RESPA required Wells to provide the requested information, if available, or explain why it was unavailable.  12 C.F.R. § 1024.36(d)(1)(ii).  Wells's explanation that some documents were unavailable due to its retention policy is undermined by Wells's own response to QWR 2.

For example, the Santhoshes requested a "complete and itemized statement of the payment history from the inception of the loan to the date of this letter."  Letter 1, at 3.  In response, Wells only provided payment history dating back to 2015, and claimed that older information was unavailable due to its retention policy.

On its face, this response complies with RESPA because Wells provided the available information and explained why the remaining information was unavailable.[4]  But Wells's contention that such information was "unavailable" is undermined by its response to QWR 2.  In QWR 2, the Santhoshes made many of the same requests as in Letter 1.  Letter 2, at 1–2.  Although the

---

[4] This stated policy does appear to contradict a separate CFPB regulation, 12 C.F.R. § 1024.38, which requires loan servicers to "retain records that document actions taken with respect to a borrower's mortgage loan account until one year after the date a mortgage is discharged."  But this violation cannot form the basis for a Section 2605 claim, since there is no private right of action.  78 Fed. Reg. 10696, 10817-18 (Feb. 14, 2013).

full scope of information provided in Wells's response is unclear, Wells did provide at least *some* transaction information that it had previously declared unavailable.  For example, the initial itemization of transactions begins with a transaction dated March 3, 2006.  Letter 2 Response, at 2  The response also includes a "Customer Account Activity Statement" that provides transaction history dating back to 2012.  Letter 2 Response, at 4.  As a result of these inconsistencies, the Santhoshes have plausibly alleged that Wells failed to provide all available information in response to Letter 1 (or provide a truthful explanation as to its unavailability).  *See* 12 U.S.C. § 2605(e); 12 C.F.R. § 1024.36.

### 2.   Actual Damages

To sustain their RESPA claim, the Santhoshes must adequately plead damages.  RESPA provides for actual and statutory damages in the case of a "pattern or practice of noncompliance."  12 U.S.C. § 2605(f).  A plaintiff must first establish actual damages to recover statutory damages.  *See* *Jackson*, 2019 WL 3426240, at *7 (collecting cases).  And to recover actual damages, a plaintiff must allege that those damages "were proximately caused by defendant's violation of RESPA."  *Id.*

Among other things, the Santhoshes allege out-of-pocket expenses in preparing both QWRs.  Am. Compl. ¶¶ 52, 69.

13

Borrowers are entitled to the "costs incurred *after* [a servicer has provided] an incomplete or insufficient response," not before. *Jackson*, 2019 WL 3426240, at *8 (emphasis added). Therefore, although the Santhoshes have adequately alleged that Wells's response to QWR 1 was insufficient under RESPA, they are not entitled to the costs of preparing QWR 1. *Id.*

However, the Santhoshes allege that QWR 2 was required because of Wells's inadequate response to QWR 1. Am. Compl. ¶ 52. That is enough at this stage, because "damages stemming from the preparation of later requests . . . would not have needed to [be] prepare[d] but for" Wells's incomplete response. *Tanasi v. CitiMortg., Inc.*, 257 F. Supp. 3d 232, 271 (D. Conn. 2017); *see also Evans v. Select Portfolio Servicing, Inc.*, No. 18-CV-5985, 2020 WL 5848619, at *13 (E.D.N.Y. Sept. 30, 2020) ("Costs incurred after an incomplete or insufficient response are recoverable under RESPA . . . ."). The damages from this shortfall may be insubstantial, but that is a question for a later date.

**D.   Wells's Response to QWR 2**

The Santhoshes also allege that Wells violated RESPA because its response to QWR 2 was incomplete. Am. Compl. ¶¶ 66–70. The parties dispute exactly what was contained in Wells's

14

response, but regardless, the Santhoshes have not adequately pled damages stemming from QWR 2.[5]

The Santhoshes allege actual damages in the form of emotional distress, damage to their credit, and payments on and accrual of interest on an inflated loan balance. Am. Compl. ¶ 69. But the Santhoshes plead no *facts* suggesting that these harms were proximately caused by Wells's response to QWR 2. As to their credit score, the Santhoshes assert that they suffered "a loss and/or reduction of credit, and damage to credit rating from Wells Fargo's reporting of an inflated and/or unverified debt." Am. Compl. ¶ 56. Absent, however, are any facts that would connect their alleged credit damage to Wells's incomplete QWR response. *See, e.g.*, *Manfre*, 2026 WL 807179, at *4 (plaintiff "alleges no facts that connect his credit rating . . . to [defendant's] failure to provide the loan documents").

Nor have the Santhoshes sufficiently alleged that Wells's QWR response caused them emotional distress. Am. Compl. ¶¶ 53, 56. We assume, without deciding, that emotional damages are compensable in response to RESPA violations. Still, the Santhoshes have failed to plausibly plead that the insufficient response to QWR 1 was itself the proximate cause of any emotional harm. Among other shortcomings, the complaint fails

---

[5] Given that Letter 2 was also sent in 2024, the statute of limitations analysis from above applies with equal force here.

to "disentangle the distress that was occasioned by their loan modification in which [they] voluntarily entered from that which may have been occasioned by the Defendant's failure to respond fully to . . . [their] request for information." *Sutton*, 228 F. Supp. 3d at 275. Given that the Santhoshes were already in default and facing a foreclosure action by Wells, such harms "were not caused by [defendant's] failure to respond to the QWR, but by difficulties repaying the mortgage loan and potential foreclosure proceedings." *Castro v. Bank of N.Y. Mellon for CWalt Inc.*, No. 12-CV-4375, 2018 WL 4158344, at *5 (E.D.N.Y. Aug. 30, 2018).

Lastly, the Santhoshes allege no facts supporting their allegations that Wells's response proximately caused them the financial burden of "being forced to make payments on an inflated and unverified loan balance" and accrue and pay "excess interest on such unverified principal." Am. Compl. ¶ 69. The complaint explicitly acknowledges that the Santhoshes voluntarily agreed to Modification 2. *Id.* ¶ 63. Even if Wells failed to provide all the requested information, the complaint indicates it was Modification 2, not the allegedly incomplete QWR response, that caused the Santhoshes' financial burden. *See, e.g.*, *Murray v. Newrez LLC*, No. 24-CV-6160, 2025 WL 1158090, at *8 (E.D.N.Y. Apr. 21, 2025) (plaintiff cannot "allege that the $70,277.15 in unfair fees imposed by the Loan

16

Modification . . . were proximately caused by defendant's failure to respond to her QWRs").

## IV.  Conclusion

For these reasons, Wells's motion to dismiss is granted in part.  The claim regarding Wells's second QWR response is dismissed without prejudice.  The sole claim that will proceed is the allegation that Wells's response to the plaintiffs' first QWR violated RESPA by failing to provide all available information.

SO ORDERED.

\_\_\_/s/ Eric Komitee_____
ERIC KOMITEE
United States District Judge

Dated:    May 20, 2026
          Brooklyn, New York